Erika Angelos Heath (SBN 304683)
**FRANCIS MAILMAN SOUMILAS, P.C.**
351 California Street, Suite 700
San Francisco, CA 94104
T: 628-246-1352
eheath@consumerlawfirm.com

James A. Francis*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Telephone: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 559-6072
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*
*Application for admission *pro hac vice* forthcoming

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAYDEE LOAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPPLYING DEMAND, INC.,<br><br>Defendant. | Case No. 3:26-cv-9703<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Kaydee Loar ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following class action complaint (the "Action") against Defendant Supplying Demand, Inc. ("Defendant"), for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## INTRODUCTION

1. This is a class action on behalf of consumers who purchased Liquid Death "0g Sugar" Sparkling Energy drink products (collectively, the "Products")[1].

2. Plaintiff and Class members, who have purchased these Products, bring this Action because of material representations which are false and misleading: Defendant markets and advertises the Products as "Zero Sugar" and "0 Sugar" (collectively, the "Representations"). However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards. It is not present in trace amounts; it is the second-listed and predominant ingredient by weight.

3. 0.5 grams of sugar is the maximum amount of sugar that federal and California law permit in a product labeled "sugar free." 21 C.F.R. § 101.60(c)(1)(i); 21 C.F.R. § 101.9(c)(6)(ii).

4. Defendant made its Representations about "zero" sugar in its Products in order to induce health-conscious consumers, like Plaintiff, to purchase the Products. But these representations are categorically misleading and false.

[1] The Products include, but are not limited to, the following flavors of Liquid Death 0g Sugar Sparkling Energy Drink: Murder Mystery, Scary Strawberry, Orange Horror, and Tropical Terror, including variety packs, in all pack sizes.

5. For as long as consumable goods have been sold, "health-washing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. To compound matters, the misrepresentations made on the Products are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiff and Class members would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

6. Against this backdrop, Plaintiff and the Class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiff and Class members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made about packaging and advertising or would not have purchased the Products at all.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

8. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

9. Defendant is headquartered and routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products, and by accepting and processing payments for those products within this State. Plaintiff is a citizen of California who resides in this District.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## THE PARTIES

**Plaintiff Kaydee Loar**

11. Plaintiff Kaydee Loar is a citizen of California residing in Santa Rosa, California. Plaintiff Loar purchased Defendant's Liquid Death Sparkling Energy in the Scary Strawberry and Tropical Terror flavors for personal use at Walmart on March 8, 2026. Prior to making her purchase, Plaintiff Loar saw and relied on Defendant's representations that the Products were "Sugar Free." Based on these representations, Plaintiff Loar reasonably believed that the Products contained no sugar. Plaintiff Loar relied on these representations when she decided to purchase the Products. Accordingly, these representations were part of the basis of her bargain, in that Plaintiff Loar would not have purchased the Products on the same terms had she known that the representations were untrue. Furthermore, in making her purchase, Plaintiff Loar paid a price premium due to Defendant's false and misleading "Sugar Free" claims. Plaintiff Loar, however, did not receive the benefit of the bargain because the Products were not, in fact, free of sugar. Instead, they were sweetened predominantly with allulose. Had Plaintiff Loar known that Defendant's representations were false and misleading, she would not have purchased the Products or would have paid

substantially less for them. Plaintiff Loar purchased the Product for herself for personal use during the Class Period. Plaintiff Loar bought the Product because she relied on Defendant's representations including that the Product was "sugar free." The Products are sold at a price premium and are more expensive than other beverages. Plaintiff Loar relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

12. Plaintiff Loar remains interested in purchasing electrolyte drink mixes and hydration products that are truly sugar-free. However, she cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff Loar will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff Loar is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff Loar nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

**Defendant Supplying Demand, Inc.**

13. Defendant Supplying Demand, Inc. is a California corporation with its principal place of business in Los Angeles, California. At all times during the Class Period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

## FACTUAL BACKGROUND

### Consumers Seek Out and Pay More for Products That Contain No Sugares

14. It is well known that consuming added sugar can present a variety of dangerous health

conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[2] Sugar-sweetened beverages are by far the top source of added sugars for Americans.[3]

15. For decades, federal health authorities have recommended limiting added sugar intake.[4] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[5]

16. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

17. Defendant has capitalized on that demand. It markets Products whose predominant ingredient is allulose, a sugar, while labeling and advertising them as "Sugar Free." Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

---

[2] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[3] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

[4] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[5] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

**Defendant's False and Misleading Representations**

18. Defendant manufactures, markets, and sells the Products throughout California and the United States through stores such as Target, Ralphs, CVS, Walmart, Albertsons, Vons, Pavillions, and grocery stores. They also sell the product online through stores such as Amazon.com.

19. Below is an illustrative sampling of the Products and the Representations:







20. On the front label of the Products, Defendant prominently states that the Product is "0g Sugar."

21. Defendants' advertising repeats these claims across every marketing channel. On Defendant's own website, Defendant advertises the Products as containing "Zero Sugar" and "No Artificial Colors or Dyes".

22. Defendant disseminated the Representations through the Products' packaging, its own website, and other stores such as Amazon.com. On Amazon.com, Defendants advertise the Products as containing "Allulose". In the same image, representations of the "0g Sugar" claim can be seen.




23. The Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "Zero Sugar" and "0 Sugar," and federal and California law prescribe an objective standard governing when those terms may be used.

24. "Sugar-Free" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. The Products' "0g" Nutrition Facts declarations further reinforce the no-sugar message to consumers, making it impossible for consumers to discover that the Products do, in fact, contain sugar.

**Allulose Is A Sugar**

25. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and

sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[6] No such rulemaking ever occurred.

26. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[7] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[8] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[9]

27. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[10] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[11]

28. The Products violate the FDA Nutrient Content Regulations. Congress empowered

---

[6] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016)

[7] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[8] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[9] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[10] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[11] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

29. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate "Zero Sugar" and "0 Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

30. The "Zero Sugar" and "0 Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

31. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

32. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "zero sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

(i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii),

> per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

33. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

34. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

35. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

36. Plaintiff does not seek to enforce the FDCA directly. They seek relief under independently enforceable state consumer-protection laws, including Sherman Law provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards California has adopted and the conduct that renders the Products misbranded under California law.

**<u>Defendant's Conduct Violates California's Food Labeling Laws</u>**

37. Defendant's marketing, advertising, distribution, and sale of the Products violate the

misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); see also id. § 110670.

38. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

39. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

40. (a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular; (b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food); (c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

41. Because the Products bear "Zero Sugar" nutrient-content claims despite containing Allulose, the Products are misbranded under California law, and Defendant's advertising,

distribution, and sale of the Products are unlawful.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

42. Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation on the front of the package that the Products are "Sugar Free." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

43. Defendant's deception is especially misleading because a consumer who reviews the Nutrition Facts table would encounter a 0g Total Sugars disclosure, even though the Product contains allulose (a sugar).

44. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

45. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar, as its own "Adds A Dietarily Insignificant Amount Of Sugar" statement confirms; (c) its labels represented that the Products contained no sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for Products containing sugar.

46. Defendant, as the marketer and distributor of the Products, controlled, or participated

in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**<u>Defendant's Sugar-Free Claims Injured Plaintiff and the Class</u>**

47. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that the predominant ingredient is a sugar; (d) the fact that the Products are not sugar free; and (e) the fact that the Products are misbranded under federal and California law when sold bearing the Representations.

48. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products that Plaintiff and members of the Classes did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff Loar and members of the California Subclass, purchased misbranded Products that could not lawfully have been sold in California.

49. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**<u>Plaintiff Lacks an Adequate Remedy at Law</u>**

50. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on Defendant's Representations when deciding

whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Representations can address that prospective harm.

51. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, and disgorgement of revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

52. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL and FAL carry four-year limitations periods, which may reach purchases not fully remediable under other causes of action.

53. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiff' warranty and common-law claims are more limited, focusing on duties arising from Defendant's Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## **CLASS ACTION ALLEGATIONS**

54. Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the following Class:

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **-and-**
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

55. Excluded from the Class are the following individuals and/or entities: Defendant and

Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

56. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

57. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

58. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

59. Commonality: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products were "Sugar Free";

c. Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

i. Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

60. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

61. Adequacy of Representation: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

62. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

63. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress

individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

64. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

65. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

66. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

67. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

68. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure Rule 23.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

69. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

70. Plaintiff Loar incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

71. Plaintiff Loar brings this claim on behalf of herself and the California Subclass against Defendant.

72. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

73. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

74. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

75. Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products are "Sugar Free" even though they contain allulose.

76. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

77. On September 4, 2026, counsel for Plaintiff Loar mailed a pre-suit notice letter pursuant to Cal. Civ. Code § 1782 via certified mail, return receipt requested, to Defendant. The letter provided notice of the alleged CLRA violations and other consumer protection statutes on behalf of the class members and demanded that the recipients correct the unlawful, unfair, false, or deceptive practices alleged herein. A copy of the letter is attached hereto as **Exhibit A**.

78. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of

written notice, pursuant to section 1782 of the CLRA, Plaintiff intends to amend the complaint to seek actual, punitive, and statutory damages.

79. Plaintiff seeks all available relief under the CLRA for all violations complained of herein.

80. Accordingly, Plaintiff and the other Class members seek restitution and an order enjoining the acts and practices described above.

81. Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

**COUNT TWO**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

82. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

83. Plaintiff Loar brings this claim individually and on behalf of the California Subclass against Defendant.

84. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

85. Plaintiff Loar has standing to pursue this claim because she suffered an injury in fact and lost money or property as a result of Defendant's conduct. Plaintiff Loar purchased the Product for personal use, relied on Defendant's representation that it was "Sugar Free," and spent money she otherwise would not have spent had he known it contained allulose.

86. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the

Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of themselves or others similarly situated who are affected by the unlawful or unfair business practice or act.

87. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 et seq.

88. Defendant violated the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. §§ 101.13 and 101.60(c)(1).

89. Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Business & Professions Code § 17200 et seq. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. There is no utility in representing that a product sweetened predominantly with sugar contains no sugar. Furthermore, Defendant's false and misleading representations are detrimental to competitors offering electrolyte drink mixes that either do not make similar claims or do not contradict those claims by

sweetening their products with sugar. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

90. Plaintiff Loar and the California Subclass Members suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the presence and amount of sugar in the Products. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiff Loar and the California Subclass Members.

91. Plaintiff Loar and the California Subclass Members could not have reasonably avoided their injury or known that the Products' prominent labeling and marketing were inaccurate. Furthermore, consumers lack the specialized knowledge to determine whether an ingredient such as allulose is a sugar, and Defendant's own back-panel disclaimer affirmatively assured them that allulose added a "dietarily insignificant amount of sugar." As such, they could not have reasonably avoided the injury they suffered.

92. Pursuant to California Business and Professions Code § 17203, Plaintiff Loar and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT THREE**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass**

93. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

94. Plaintiff Loar brings this claim on behalf of herself and the California Subclass against Defendant.

95. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the California Subclass and the public. Defendant represents that the Products are "Sugar Free" even though they contain allulose.

96. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents that the Products are "Zero Sugar" and "0 Sugar."

97. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. Plaintiff Loar and the California Subclass based their purchasing decisions on Defendant's materially false Representations and were injured in fact and lost money or property as a result.

98. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

99. Plaintiff Loar and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT FOUR
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively, the California Subclass)**

100. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

101. Plaintiff brings this claim individually and on behalf of the Nationwide Class, or alternatively the California Subclass ("Class") against Defendant.

102. To the extent required, Plaintiff asserts this cause of action in the alternative to their legal claims, as permitted by Federal Rule of Civil Procedure 8.

103. Plaintiff and the Class Members conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Products.

104. Defendant knew of the benefit Plaintiff and the Class Members conferred on it.

105. Defendant has been unjustly enriched by retaining revenues from Plaintiff's and Class Members' purchases. That retention is unjust because Defendant misrepresented that the Products were sugar free, causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

106. Defendant accepted and retained the benefit of revenues derived from sales of the Products to Plaintiff and Class Members.

107. Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

108. Plaintiff and Class Members are therefore entitled to restitution in the form of revenues derived from Defendant's sale of the Products.

109. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members have suffered damages in an amount to be proven at trial.

110. Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's conduct.

111. Plaintiff and the Class Members lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

112. Legal remedies available to Plaintiff and the Class Members are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs

damages. Hence, the Court may award restitution even if it determines that Plaintiff has failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

113. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under Federal Rule of Civil Procedure Rule 23, including the appointment of Plaintiff's counsel as Class Counsel;

2. For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

3. For an order finding in favor of Plaintiff and the Classes on all counts asserted

herein;

4. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief;

5. For prejudgment interest on all amounts awarded;

6. For an order of restitution and all other forms of equitable monetary relief;

7. For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

8. For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: September 4, 2026

Respectfully submitted,

By: */s/ Erika A. Heath*

Erika Angelos Heath (SBN 304683)
**FRANCIS MAILMAN SOUMILAS, P.C.**
351 California Street, Suite 700
San Francisco, CA 94104
T: 628-246-1352
eheath@consumerlawfirm.com

James A. Francis
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Telephone: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Pro Hac Vice admission forthcoming*

Attorneys for Plaintiff and the Class